**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CASTRO & CO., LLC and | ) | |
| TEXAS CRYPTOMARKS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:18-cv-00678-L |
| v. | ) | |
| | ) | Hon. Sam A. Lindsay |
| POLYMATH INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT POLYMATH INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Polymath Inc. ("Polymath"), for its Answer and Affirmative Defenses in

response to Plaintiffs' First Amended Complaint (ECF No. 10) ("FAC"), hereby states and alleges

the following:

**ANSWER**

**NATURE OF ACTION**

Plaintiffs file this action against Defendant Polymath, Inc. for federal trademark
infringement, unfair competition, and false advertising arising under the Lanham Act (15
U.S.C. § 1125), and trademark infringement, unfair competition, and unjust enrichment under
the common law of the State of Texas in connection with Polymath Inc.'s unauthorized
use of Plaintiffs' pending trademarks.

**ANSWER:** Polymath admits that, in the FAC, Plaintiffs allege claims purportedly

arising under the Lanham Act and Texas common law. Polymath denies that it is liable under

any of Plaintiffs' asserted claims.

Defendant, from its principal place of business in Barbados, is utilizing – in its entirety
- Plaintiffs' SECURITIES TOKEN and POLYMATH SECURITIES TOKEN marks
without a license, without authority, and without permission from Plaintiffs. Plaintiffs seek,
among other forms of relief, actual and statutory damages, a declaratory judgment that
Plaintiffs' are the rightful owners of their respective marks, and an order enjoining Defendant
from utilizing Plaintiffs' marks.

**ANSWER:** Polymath admits only that Plaintiffs are seeking certain relief in this action.

Polymath specifically denies that Plaintiffs have any rights in the POLYMATH SECURITIES

TOKEN and SECURITIES TOKEN marks. Polymath denies all other allegations in this

paragraph to the extent they are not specifically admitted or denied.

## PARTIES

1.      Plaintiff, Castro & Co., LLC, is a Wyoming Limited Liability Company, registered to conduct business in Texas whose principal address is 13155 Noel Rd., Suite 900, Dallas, Texas 75240.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 1 of the FAC and therefore denies each and every

allegation.

2.      Plaintiff, Texas Cryptomarks, LLC, is a Texas limited liability company with its principal place of business located in Dallas, Texas. Texas Cryptomarks, LLC's office address in Dallas is 13155 Noel Rd., Ste. 900, Dallas, Texas 75240.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 2 of the FAC and therefore denies each and every

allegation.

3.      Defendant, Polymath, Inc., is a foreign business entity headquartered in Barbados. Polymath, Inc.'s principal place of business is 3rd Floor, The Goddard Building, Haggatt Hall, St.  Michael Barbados, BB11509.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over the federal claims made in this Complaint pursuant to the Lanham Act, 28 U.S.C. § 1338 (federal jurisdiction over trademarks and unfair competition) and 28 U.S.C. § 1331 (federal question jurisdiction).

**ANSWER:** Admitted.

5.      The Court has supplemental jurisdiction over the subject matter of Plaintiffs' claims

arising under Texas law pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** Admitted.

6.        Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by FED. R. CIV. P. §§ 57 and 65, and by the general legal and equitable powers of this Court.

**ANSWER:** Paragraph 6 of the FAC states legal conclusions to which no response is

required.

7.        Venue is proper in the Northern District of Texas and this Court pursuant to 28 U.S.C. § 1391 because Defendant has committed and continues to commit tortious acts in the State of Texas and this district.

**ANSWER:** Polymath denies that it "has committed and continues to commit tortious

acts in the State of Texas and this district."  The remaining allegations of Paragraph 7 of the FAC

are legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

8.        Cryptographic technology was originally made famous by Satoshi Nakamoto, as he is known, the founder of Bitcoin. Bitcoin was the world's first digital currency based on cryptographic technology commonly referred to as blockchain. Since the founding of Bitcoin, many other digital currencies have emerged along with various cryptographic based blockchain technology variations.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 8 of the FAC and therefore denies each and every

allegation.

9.        As various companies have utilized the technological benefits offered by the blockchain and cryptographic technologies for various applications, multiple terms have emerged to describe the "currencies." These terms include "coin" and "token." Plaintiffs license cryptographic, blockchain, and digital asset related trademarks to companies operating businesses that utilize cryptographic technology, blockchain technology, or digital assets.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 9 of the FAC and therefore denies each and every

allegation.

10.     Operating in the realm of digital currencies and utilizing cryptographic technology for the purpose of the exchange and transfer of security instruments, Plaintiffs have acquired common law trademark rights for the terms SECURITIES TOKEN and POLYMATH SECURITIES TOKEN.

**ANSWER:** Denied.

11.     Plaintiff Texas Cryptomarks owns rights to the "SECURITIES TOKEN" mark ("ST Mark" individually) and Plaintiff Castro & Co owns the "POLYMATH SECURITIES TOKEN" mark ("PST mark" individually)("Marks" collectively"). Plaintiffs were the first to use their respective Marks in the United States and in Texas in connection with the particular goods and services provided by Plaintiffs. Accordingly, Plaintiffs own all rights, title, and interest in and to the Marks as applied to the Plaintiffs' goods and services under the federal Lanham Act and under applicable state laws, including Texas law and have duly filed trademark applications for the marks.

**ANSWER:** Denied.

12.     Plaintiffs have expended a significant amount of time, labor, skill, and money to design, develop, market, and license the Marks. Plaintiffs have been advertising their goods and services using the Marks in a variety of ways, including printing, advertising, online advertising, web pages, and licensing. Many of Plaintiffs' customers have been located in Texas; others have been located in the United States; still others have been located outside of the United States. Moreover, use of Plaintiffs' Marks has been continuous and substantially exclusive, including as licensed to third parties (SECURITIES TOKEN Mark) in addition to listing the PST Mark for licensing on the U.S. Trademark Exchange.

**ANSWER:** Denied.  Polymath specifically denies that Plaintiffs have any rights in the

POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.

13.     Defendant is a foreign financial-services business entity, which purports to enable trillions of dollars of securities to migrate to the blockchain, using the POLYMATH mark and the tagline "The *SECURITIES TOKEN* Platform" in foreign commerce from its principle place of business in St. Michael, Barbados.

**ANSWER:** Polymath denies that it has used or is using the POLYMATH mark and the

"THE SECURITIES TOKEN PLATFORM" tagline only in foreign commerce and not in U.S.

commerce.  Polymath admits all other allegations in Paragraph 13 to the extent they are not

specifically denied.

14.    Defendant has no U.S. based intellectual property rights or trademark in Plaintiffs' SECURITIES TOKEN or POLYMATH SECURITIES TOKEN marks, yet it employs such terms on its website to market Defendant's financial services. Defendant has no extensive "prior use" of the terms in connection with the bona fide offering of goods or services in the United States nor does Defendant use the terms for a non-commercial or fair use purpose.

**ANSWER:**  Polymath admits only that it is using, and has used since at least as early as September 2017, the marks SECURITIES TOKEN and POLYMATH on its website to market its financial services.  Polymath denies all other allegations in Paragraph 14 to the extent they are not specifically admitted.

15.     Defendant misleadingly uses Plaintiffs' marks in their entirety throughout its website at https://polymath.network to promote its services by claiming to be "Launching *ST* Revolution" and asserting its ST20 token as "The *SECURITIES TOKEN* Standard." Defendant's  website further claims that "Polymath's *ST20* token standard simplifies the process of creating and  investing in security tokens" and that "Our [Polymath's] simple, transparent *ST20* token standard  is open source and has KYC (Know Your Customer) built-in." All these uses of Plaintiffs' marks  misleadingly suggest Plaintiffs are affiliated with, connected to, or sponsored by Plaintiffs when,  in fact, they are not.

**ANSWER:**  Polymath admits that is using, and has used since at least as early as September 2017, the marks POLYMATH and SECURITIES TOKEN throughout its website at https://polymath.network to promote its services, including by using the statements quoted in Paragraph 15 of the FAC.  Polymath specifically denies that Plaintiffs have any rights in the POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.  Polymath denies all other allegations in Paragraph 15 to the extent they are not specifically admitted or denied.

16.    By using Plaintiffs' marks, Defendant substantially increases the risk that consumers will be confused as to the connection or affiliation between Defendant and Plaintiffs. When a consumer looking for SECURITIES TOKEN, or POLYMATH SECURITIES TOKEN reaches Defendant's domain name, by virtue of Defendant's reproducing Plaintiffs' marks in their entirety, the consumer is prevented from reaching Plaintiff or Plaintiffs' business partners who license Plaintiffs' marks and are likely to be confused. They are directed to a website that is not operated by any Plaintiff, a party related to a Plaintiff, or any United States business entity for that matter. Plaintiffs or their business partners lose opportunities to interact with consumers and lose initial contact while Defendant increases internet traffic through the utilization of Plaintiffs' marks.

**ANSWER:**  Denied.  Polymath specifically denies that Plaintiffs have any rights in the POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.

17.     Defendant is also using Plaintiffs' marks in promoting its Polymath Platform.

**ANSWER:**  Polymath admits that it is using the marks POLYMATH and SECURITIES TOKEN in promoting is services, but denies that Plaintiffs have any rights to those marks. Polymath denies all other allegations in Paragraph 17 to the extent they are not specifically admitted or denied.

18.     Defendant's White Paper, like its website, misleadingly uses Plaintiffs' marks to promote Defendant's Polymath Platform. Using the POLYMATH mark with the tagline "The SECURITIES TOKEN Platform" on its title page, Defendant's White Paper purports to educate customers about the emerging trend of tokenizing securities and to explain and promote the Polymath solution – opening up blockchain to legally complaint securities through its Polymath platform.

**ANSWER:**  Polymath admits that is using, and has used since at least as early as September 2017, the marks POLYMATH and SECURITIES TOKEN throughout its White Paper to promote its services.  Polymath specifically denies that Plaintiffs have any rights in the POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.  Polymath denies all other allegations in Paragraph 18 to the extent they are not specifically admitted or denied.

19.     On YouTube, on a video posted on or about January 30, 2018, Defendant promotes its Polymath Platform with a video that utilizes Plaintiffs' marks and proclaims "Let the stampede begin."

**ANSWER:**  Polymath admits that it posted a YouTube video on or about January 30, 2018, available at https://youtu.be/pOYcro53SOI, in which it used the POLYMATH and SECURITIES TOKEN marks to promote its services.  Polymath specifically denies that Plaintiffs have any rights in those marks.  Polymath denies all other allegations in Paragraph 19 to the extent they are not specifically admitted or denied.

20.     Defendant's continuous use of Plaintiffs' marks in their promotional material exacerbate the likelihood of confusion that its use on its website already creates. Defendant's repeated uses of Plaintiffs' marks substantially increase the risk that consumers will be confused as to the connection or affiliation between Defendant and Plaintiffs.

**ANSWER:**  Denied.  Polymath specifically denies that Plaintiffs have any rights in the

POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.

21.     Defendant has no license, authority, or other permission from Plaintiffs to use the POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks in connection with the advertising, promoting, selling, and/or offering for sale of Defendant's financial services. Defendant's egregious misuse of Plaintiffs' marks have caused, or are likely to cause great and irreparable injury to Plaintiffs, including irreparable injury to the goodwill and reputation embodied in those marks, for which Plaintiffs have no adequate remedy at law.

**ANSWER:**  Denied.  Polymath specifically denies that it needs a license, authority, or

permission from Plaintiffs to use the POLYMATH SECURITIES TOKEN or SECURITIES

TOKEN marks, in which Plaintiffs have no rights.

22.     Defendant has been engaged in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights, or with bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs' marks.

**ANSWER:**  Denied.  Polymath specifically denies that Plaintiffs have any rights in the

POLYMATH SECURITIES TOKEN and SECURITIES TOKEN marks.

## COUNT I
## Federal Unfair Competition
## 15 U.S.C. § 1125(a)(1)(A)
## (Infringement of the SECURITIES TOKEN Mark)

23.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-22 as if fully set forth herein.

24.     Plaintiff Texas Cryptomarks was the first to use the SECURITIES TOKEN mark in the United States and in Texas in connection with licensing of cryptographic, blockchain, and digital asset related trademarks Plaintiff provides to businesses that utilize cryptographic technology, blockchain technology and digital assets. As the senior user of the mark in the United

States and in Texas, Plaintiff has acquired rights in the SECURITIES TOKEN mark and has trademark priority.

**ANSWER:** Denied.

25.    Defendant's use of Plaintiff's SECURITIES TOKEN mark constitutes use of terms, names, symbols and devices, and use of false designation of origin, all of which is likely to cause confusion, mistake, or deception as to the source of the services provided by Defendant, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff's.

**ANSWER:** Denied.

26.    The services on which Defendant uses Plaintiff's SECURITIES TOKEN mark is identical to and/or substantially similar to the services offered by Plaintiff and its licensees in connection with the mark.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 26 of the FAC and therefore denies each and every

allegation.

27.    Plaintiff has not consented to Defendant's use of the SECURITIES TOKEN mark.

**ANSWER:** Denied.  Polymath specifically denies that it needs Plaintiffs' consent to use

the SECURITIES TOKEN mark, in which Plaintiffs have no rights.

28.    Defendant's use of Plaintiffs' SECURITIES TOKEN mark is likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, or some legitimate connection between the goods and services provided Defendant and Plaintiff's.

**ANSWER:** Denied.

29.    The likely confusion, mistake, or deception caused by Defendant violates §43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**ANSWER:** Denied.

30.    Upon information and belief, Defendant has acted with knowledge of Plaintiff's rights in the SECURITIES TOKEN mark and with deliberate intention or willful blindness to unfairly benefit from use of the mark.

**ANSWER:** Denied.

31.    Plaintiff has been, is now, and will be irreparably harmed by Defendant's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Defendant will continue to infringe Plaintiffs' SECURITIES TOKEN mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:** Denied.

**COUNT II**
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**
**(False Advertising of SECURITIES TOKEN Mark)**

32.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:** Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-31 as if fully set forth herein.

33.    Defendant's unauthorized use of Plaintiff Texas Cryptomarks' SECURITIES TOKEN mark on its website, YouTube video, and White Paper promoting and advertising Defendant's Polymath Platform constitute false and/or misleading statements that misrepresent the nature, characteristics, and geographic origin of Defendant's services in that they falsely and misleadingly suggest Defendant's services are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendant is in some way connected or affiliated with Plaintiff's.

**ANSWER:** Denied.

34.    Defendant's false and/or misleading statements are material in that they are likely to influence customer decisions on whether to engage Defendant's services – particularly considering that Defendant is a foreign business entity incorporated and headquartered in Barbados.

**ANSWER:** Denied.

35.    Defendant's false and/or misleading statements have the tendency to deceive a substantial segment of their intended audience.

**ANSWER:** Denied.

36.    Defendant's unauthorized use of Plaintiff's SECURITIES TOKEN mark as alleged herein constitutes false and/or misleading descriptions and representations of fact, all in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**ANSWER:** Denied.

37.     Upon information and belief, Defendant has made each of its false and/or misleading statements with knowledge of their falsity or misleading character, or willfully and with reckless disregard for their falsity or misleading character.

**ANSWER:** Denied.

38.     Plaintiff has been, is now, and will be irreparably harmed by Defendant's false and/or misleading advertising and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Defendant will continue to infringe Plaintiff's SECURITIES TOKEN mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:** Denied.

## COUNT III
### Federal Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)
### (Infringement of the POLYMATH SECURITIES TOKEN Mark)

39.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-38 as if fully set forth herein.

40.     Plaintiff Castro & Co. was the first to use the POLYMATH SECURITIES TOKEN mark in the United States and in Texas in connection with licensing of cryptographic, blockchain, and digital asset related trademarks Plaintiff provides to businesses that utilize cryptographic technology, blockchain technology and digital assets. As the senior user of the mark in the United States and in Texas, Plaintiff has acquired rights in the POLYMATH SECURITIES TOKEN mark and has trademark priority.

**ANSWER:** Denied.

41.     Defendant's  use of Plaintiff's  POLYMATH SECURITIES TOKEN mark constitutes use of terms, names, symbols and devices, and use of false designation of origin, all of which is likely to cause confusion, mistake, or deception as to the source of the services provided by Defendant, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, licensed by, affiliated or associated with, or in some other way legitimately connected to Plaintiff's.

**ANSWER:** Denied.

42.     The services on which Defendant uses Plaintiff's POLYMATH SECURITIES TOKEN mark is identical to and/or substantially similar to the services offered by Plaintiff in connection with the mark.

**ANSWER:** Polymath lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the FAC and therefore denies each and every allegation.

43.     Plaintiff has not consented to Defendant's use of the POLYMATH SECURITIES TOKEN mark.

**ANSWER:** Denied.  Polymath specifically denies that it needs Plaintiffs' consent to use the POLYMATH SECURITIES TOKEN mark, in which Plaintiffs have no rights.

44.     Defendant's use of Plaintiffs' POLYMATH SECURITIES TOKEN mark is likely to cause confusion, mistake, or deception, in that customers and potential customers are likely to believe there is sponsorship, approval, licensing, affiliation, or some legitimate connection between the goods and services provided Defendant and Plaintiff's.

**ANSWER:** Denied.

45.     The likely confusion, mistake, or deception caused by Defendant violates §43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**ANSWER:** Denied.

46.     Upon information and belief, Defendant has acted with knowledge of Plaintiff's rights in the POLYMATH SECURITIES TOKEN mark and with deliberate intention or willful blindness to unfairly benefit from use of the mark.

**ANSWER:** Denied.

47.     Plaintiff has been, is now, and will be irreparably harmed by Defendant's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Defendant will continue to infringe Plaintiffs' POLYMATH SECURITIES TOKEN Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:** Denied.

### COUNT IV
### False Designation of Origin and False Advertising
### 15 U.S.C. § 1125(a)(1)(B)
### (False Advertising of POLYMATH SECURITIES TOKEN Mark)

48.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-47 as if fully set forth herein.

**ANSWER:** Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-47 as if fully set forth herein.

49.     Defendant's unauthorized use of Plaintiff Castro & Co.'s POLYMATH
SECURITIES TOKEN mark on its website, YouTube video, and White Paper promoting and
advertising Defendant's Polymath Platform constitute false and/or misleading statements that
misrepresent the nature, characteristics, and geographic origin of Defendant's services in that they
falsely  and misleadingly suggest Defendant's services are authorized, sponsored, approved,
endorsed or licensed by Plaintiffs, or that Defendant is in some way connected or affiliated with
Plaintiff's.

**ANSWER:** Denied.

50.     Defendant's false and/or misleading statements are material in that they are likely
to influence customer decisions on whether to engage Defendant's services – particularly
considering that Defendant is a foreign business entity incorporated and headquartered in Barbados.

**ANSWER:** Denied.

51.     Defendant's false and/or misleading statements have the tendency to deceive a
substantial segment of their intended audience.

**ANSWER:** Denied.

52.     Defendant's unauthorized use of Plaintiff's POLYMATH SECURITIES TOKEN
mark as alleged herein constitutes false and/or misleading descriptions and representations of fact,
all in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

**ANSWER:** Denied.

53.     Upon information and belief, Defendant has made each of its false and/or
misleading statements with knowledge of their falsity or misleading character, or willfully and
with reckless disregard for their falsity or misleading character.

**ANSWER:** Denied.

54.     Plaintiff has been, is now, and will be irreparably harmed by Defendant's false
and/or misleading advertising and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116,
Defendant will continue to infringe Plaintiff's POLYMATH SECURITIES TOKEN mark. There
is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:** Denied.

## COUNT V
## Common Law Trademark Infringement
### (Infringement of the SECURITIES TOKEN Mark)

55.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-54 as if fully set forth herein.

56.     Plaintiff Texas Cryptomarks' SECURITIES TOKEN Mark is a distinctive trademark that is eligible for protection under Texas common law.

**ANSWER:**  Denied.

57.     Plaintiff Texas Cryptomarks has used the SECURITIES TOKEN Mark in commerce in the United States and Texas before Defendant began using the SECURITIES TOKEN Mark in foreign commerce in Barbados.

**ANSWER:**  Denied.

58.     Defendant's use of the SECURITIES TOKEN Mark in connection with the offering of Defendant's goods and services is likely to cause confusion between its mark and SECURITIES TOKEN Mark.

**ANSWER:**  Denied.

59.     Plaintiff has been, is now, and will be irreparably harmed by Defendant's infringement of Plaintiff's SECURITIES TOKEN Mark and, unless enjoined by  the Court pursuant to 15 U.S.C. § 1116, Defendant will continue to infringe Plaintiff's Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:**  Denied.

## COUNT VI
## Common Law Trademark Infringement
### (Infringement of POLYMATH SECURITIES TOKEN Mark)

60.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-59 as if fully set forth herein.

61.     Plaintiff Castro & Co.'s POLYMATH SECURITIES TOKEN Mark is a distinctive trademark that is eligible for protection under Texas common law.

**ANSWER:**  Polymath denies that Plaintiff has any rights to the mark POLYMATH

SECURITIES TOKEN.  Polymath admits all other allegations in Paragraph 61 to the extent they

are not specifically denied.

62.     Defendant's use of the POLYMATH SECURITIES TOKEN Mark in connection with the offering of Defendant's goods and services is likely to cause confusion between its mark and POLYMATH SECURITIES TOKEN Mark.

**ANSWER:**  Denied.

63.     Plaintiff has been, is now, and will be irreparably harmed by Defendant's infringement of Plaintiff's POLYMATH SECURITIES TOKEN Mark and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Defendant will continue to infringe Plaintiff's Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

**ANSWER:**  Denied.

**COUNT VII**
**Common Law Unfair Competition**
**(Use of the SECURITIES TOKEN Mark)**

64.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-63 as if fully set forth herein.

65.     Defendant's use of the SECURITIES TOKEN Mark permit Defendant to use and benefit from the goodwill established by Plaintiffs in the SECURITIES TOKEN Mark and constitutes unfair competition and misappropriation under the common law of the State of Texas.

**ANSWER:**  Denied.

66.     Plaintiffs have expended a significant amount of time, labor, skill, and money to design, develop, market, and license the SECURITIES TOKEN Mark. Defendant is free-riding on the efforts of Plaintiffs through Defendant's unauthorized copying and incorporation of the SECURITIES TOKEN Mark.

**ANSWER:**  Denied.

67.     Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

**ANSWER:**  Denied.

68.     Plaintiff Texas Cryptomarks, as owner of the misappropriated intellectual property, has been damaged as a result of Defendant's unauthorized use of the SECURITIES TOKEN Mark. Plaintiff is entitled to monetary damages for Defendant's misappropriation and, unless enjoined by the Court, Defendant will continue to misappropriate the efforts of Plaintiffs and the ownership rights of Texas Cryptomarks. There is no adequate remedy at law for the harm caused by the acts of Defendant alleged herein.

**ANSWER:**  Denied.

## COUNT VIII
## Common Law Unfair Competition
## (Use of the POLYMATH SECURITIES TOKEN Mark)

69.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:**  Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-68 as if fully set forth herein.

70.     Defendant's use of the POLYMATH SECURITIES TOKEN Mark permit Defendant to use and benefit from the goodwill established by Plaintiffs in the POLYMATH SECURITIES TOKEN Mark and constitutes unfair competition and misappropriation under the common law of the State of Texas.

**ANSWER:**  Denied.

71.     Plaintiffs have expended a significant amount of time, labor, skill, and money to design, develop, market, and license the POLYMATH SECURITIES TOKEN Mark. Defendant is free-riding on the efforts of Plaintiffs through Defendant's unauthorized copying and incorporation of the POLYMATH SECURITIES TOKEN Mark.

**ANSWER:**  Denied.

72.     Upon information and belief, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

**ANSWER:**  Denied.

73.     Plaintiff Castro & Co., as owner of the misappropriated intellectual property, has been damaged as a result of Defendant's unauthorized use of the POLYMATH SECURITIES

TOKEN Mark. Plaintiff is entitled to monetary damages for Defendant's misappropriation and, unless enjoined by the Court, Defendant will continue to misappropriate the efforts of Plaintiffs and the ownership rights of Castro & Co. There is no adequate remedy at law for the harm caused by the acts of Defendant alleged herein.

**ANSWER:** Denied.

## COUNT VIII
### Common Law Unjust Enrichment
### (Use of Plaintiffs' Marks)

74.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:** Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-73 as if fully set forth herein.

75.    By reason of the foregoing, Defendant has been unjustly enriched, and continue to do so, in an unknown amount.

**ANSWER:** Denied.

76.    Plaintiffs are entitled to just compensation under the common law of the State of Texas.

**ANSWER:** Denied.

## COUNT IX
### Attorney Fees
### 15 U.S.C. § 1117(a)

77.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 as if fully set forth herein.

**ANSWER:** Polymath re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1-76 as if fully set forth herein.

78.    Plaintiffs are entitled to an award of attorney fees and costs under state and federal law, including 15 U.S.C. § 1117(a).

**ANSWER:** Denied.

## RESPONSE TO JURY DEMAND

Plaintiffs' demand for a jury trial requires no response.

## RESPONSE TO PRAYER FOR RELIEF

Polymath denies that Plaintiffs are entitled to any relief whatsoever in this action, either as prayed for in the FAC or otherwise.

## <u>POLYMATH'S AFFIRMATIVE DEFENSES</u>

Polymath states the following as Affirmative Defenses without taking upon itself the burden of proof thereof.  Polymath reserves the right to assert additional Affirmative Defenses as they become known through discovery and the course of the litigation.

### <u>First Affirmative Defense</u>

Plaintiffs' claims and the relief sought are barred, in whole or in part, because Plaintiffs have not sustained any damages and have suffered no harm caused by Polymath.

### <u>Second Affirmative Defense</u>

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## <u>POLYMATH'S COUNTERCLAIMS</u>

For its Counterclaims against Counterdefendants-Plaintiffs Castro & Co., LLC and Texas Cryptomarks, LLC (collectively, "Counterdefendants"), Counterclaimant-Defendant Polymath Inc. ("Polymath") states and alleges as follows:

### NATURE OF THE ACTION

1.      On information and belief, Counterdefendants have filed this lawsuit in bad faith for the improper purpose of harassing Polymath and forcing Polymath into settlement.

2.      Counterdefendants assert ownership rights in the marks POLYMATH

SECURITIES TOKEN and SECURITIES TOKEN—marks they have never used in good faith, if at all.

3.    Instead, Counterdefendants have attempted to poach the POLYMATH mark from Polymath, which has worked hard to build valuable goodwill in the mark through bona fide use in U.S. commerce since at least as early as September 2017 in connection with financial services.

4.    Polymath has also used the slogan "THE SECURITIES TOKEN PLATFORM" in U.S. commerce since at least as early as September 2017 in connection with its financial services.

5.    Polymath's use of these marks predates any purported use by Counterdefendants (of which, on information and belief, there is none).

6.    Through its Counterclaims, Polymath seeks to set the record straight as to who is the rightful owner of the POLYMATH mark and "THE SECURITIES TOKEN PLATFORM" slogan, and to reveal Counterdefendants' lawsuit for what it is: a sham.

7.    Accordingly, Polymath hereby seeks declarations that it is the rightful owner of the marks POLYMATH and THE SECURITIES TOKEN PLATFORM, and that it has not infringed any prior rights held by Counterdefendants in these marks.

8.    Polymath further seeks a judgment that Counterdefendants have committed fraud on the Court by filing this sham litigation.

9.    Alternatively, to the extent Counterdefendants have used the POLYMATH and SECURITIES TOKEN marks in U.S. commerce, Polymath seeks a judgment that, in so doing, Counterdefendants have violated Polymath's rights under the Lanham Act and the common law of Texas.

10.    Finally, Polymath seeks to recover the attorneys' fees and costs it has incurred in

defending against this frivolous lawsuit.

## THE PARTIES

11.     Polymath is a corporation organized and existing under the laws of Barbados, having its principal place of business at 3rd Floor, The Goddard Building, Haggatt Hall, St. Michael Barbados, BB11509.

12.     On information and belief, Counterdefendant Castro & Co., LLC, is a limited liability company organized and existing under the laws of the State of Wyoming, registered to conduct business in Texas, having its principal place of business at 13155 Noel Rd., Suite 900, Dallas, Texas 75240.

13.     On information and belief, Counterdefendant Texas Cryptomarks, LLC, is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business at 13155 Noel Rd., Suite 900, Dallas, Texas 75240.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1367, 1338, and 2201.

15.     Counterdefendants are subject to personal jurisdiction in this Court because, on information and belief, Counterdefendants have their principal places of business in this district.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Counterdefendants also consented to the propriety of venue in this district by filing their FAC against Polymath in this Court, in response to which these Counterclaims are asserted.

## FACTUAL BACKGROUND

### A.     Polymath is the Senior User of the Marks

17.     Polymath is a financial-services company specializing in cryptocurrency and

cryptosecurities.

18.     Polymath is the sole owner of a portfolio of common-law trademarks directed to the mark POLYMATH in the field of digital currencies.

19.     Polymath has exclusively and continuously used the POLYMATH mark in U.S. commerce in connection with its financial services since at least as early as September 2017, including on its website at https://www.polymath.network.

20.     Along with the POLYMATH mark, Polymath has also adopted and consistently used in U.S. commerce the slogan "THE SECURITIES TOKEN PLATFORM" since at least September 2017.

21.     Beginning in December 2017, numerous blockchain-interested websites published ads for Polymath that featured both the POLYMATH mark and Polymath's slogan.

22.     Polymath has expended significant resources in promoting its services offered under the POLYMATH mark and slogan.

23.     As a result, Polymath has built and owns valuable goodwill in its brand, marks, and slogan.

**B.     Counterdefendants Attempt to Unlawfully Poach Polymath's Marks**

24.     On January 16, 2018, Counterdefendant Castro & Co., LLC ("Castro") filed an application at the U.S. Patent and Trademark Office ("USPTO") to register the mark POLYMATH SECURITIES TOKEN, which wholly contains Polymath's trademark and trade name, for use in connection with various financial services.  *See* U.S. Trademark Application Serial No. 87/756,098 (filed Jan. 16, 2018) (a true and correct copy of which is attached hereto as Exhibit A at APP 0001-0002).

25.     Castro filed its application on a Section 1(b) intent-to-use basis, meaning that, at

the time Castro filed, it was not actually using the mark in U.S. commerce.

26.     On information and belief, Castro did not have a bona fide intent to use the mark in U.S. commerce when it filed its application.

27.     On information and belief, Castro does not have a bona fide intent to use the mark in U.S. commerce to this day.

28.     On information and belief, Castro knew of Polymath's rights in the POLYMATH mark at the time Castro filed its application.

29.     On information and belief, Castro filed its trademark application in bad faith.

30.     On information and belief, Castro sought to take advantage of the fact that Polymath had not yet applied to register its common-law POLYMATH mark and believed (incorrectly) that it could poach that mark by beating Polymath to the USPTO.

31.     To date, Polymath has found no evidence that Castro is using—or has ever used— the applied-for POLYMATH SECURITIES TOKEN mark in U.S. commerce.

32.     The extreme similarity of Castro's application to Polymath's mark and services, and the fact that Castro's application was filed at a time of growing publicity for Polymath, demonstrates Castro's bad faith.

33.     On February 28, 2018, third-party CryptoSecurities Exchange, LLC ("CSX") filed an application at the USPTO to register the mark SECURITIES TOKEN, which comprises part of Polymath's slogan, for use in connection with various financial services.  *See* U.S. Trademark Application Serial No. 87/814,575 (filed Feb. 28, 2018) (a true and correct copy of which is attached hereto as Exhibit B at APP 0003-0004).  CSX filed its application on a Section 1(a) actual-use basis, claiming that it first used the mark in U.S. commerce as of the filing date.

34.     On information and belief, CSX is a client of Counterdefendants.

35.     On information and belief, neither Counterdefendant is using—or has ever used—the mark SECURITIES TOKEN in U.S. commerce.

36.     On May 7, 2018, the USPTO issued an Office Action refusing to register the POLYMATH SECURITIES TOKEN mark on the grounds that it is merely descriptive of the claimed goods and services.  *See* Exhibit C at APP 0006.

**C.     Polymath Applies to Register its POLYMATH Mark**

37.     On March 5, 2018, Polymath filed its own Section 1(a) use-based application at the USPTO to register the mark POLYMATH, claiming an actual first-use date of September 8, 2017, which predates the filing date of Castro's intent-to-use application to register the mark POLYMATH SECURITIES TOKEN.  *See* U.S. Trademark Application Serial No. 87/821,217 (filed Mar. 5, 2018) (a true and correct copy of which is attached hereto as Exhibit D at APP 00023-00024).

**D.     Counterdefendants File a Frivolous Complaint**

38.     Counterdefendants filed their  original complaint in this lawsuit on March 21, 2018.  (ECF No. 1.)

39.     On information and belief, Counterdefendants filed this lawsuit as a further step in their plain to extort Polymath by holding its rightful marks hostage, both in the USPTO and in this Court.

40.     In their original complaint, Counterdefendants tried to assert claims for infringement of federally registered trademarks based on the *pending applications* for the marks POLYMATH SECURITIES TOKEN and SECURITIES TOKEN.

41.     Counterdefendants' claims in the original complaint were frivolous at least because: (a) neither application had been registered—let alone examined—when the original

complaint was filed; and (b) CSX—not either Counterdefendant—is the applicant of record for the SECURITIES TOKEN application.

42.     The original complaint was also frivolous because Counterdefendants failed to allege (and, indeed, could not allege) that they were the senior users of the asserted marks.

43.     Accordingly, on April 11, 2018, Polymath filed a Rule 12(b)(6) motion to dismiss the original complaint for failure to state a claim.  (ECF No. 6.)

44.     In a tacit admission of the frivolousness of their original complaint, Counterdefendants filed the FAC to overcome the deficiencies identified by Polymath in its Motion to Dismiss.  (ECF No. 10.)

## COUNT I
## Declaratory Judgment of Priority

45.     Polymath incorporates by reference the allegations in Paragraphs 1-44 above as if set forth fully herein.

46.     Since at least as early as September 2017, Polymath has continuously used in U.S. commerce the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM in connection with the provision of its various financial services, including on its website at https://www.polymath.network.

47.     Since at least as early as September 2017, Polymath has extensively advertised its financial services in U.S. commerce under the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM, including on its website and in its whitepaper.

48.     By virtue of these activities, Polymath has established priority rights in the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM in connection with financial services throughout the United States.

49.     On information and belief, Counterdefendants have never used the marks

POLYMATH and SECURITIES TOKEN in U.S. commerce.

50.     On information and belief, to the extent Counterdefendants have used the marks POLYMATH or SECURITIES TOKEN in U.S. commerce, such use was de minimis and in bad faith, and occurred only after Polymath's use.

51.     Accordingly, Polymath is entitled to a declaration of priority trademark rights in the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM.

## COUNT II
## Declaratory Judgment of Non-Infringement

52.     Polymath incorporates by reference the allegations in Paragraphs 1-51 above as if set forth fully herein.

53.     Counterdefendants have alleged that Polymath's provision of financial services in U.S. commerce under the marks POLYMATH and SECURITIES TOKEN violates Counterdefendants' trademark rights.

54.     Polymath's use of the marks POLYMATH and SECURITIES TOKEN in connection with financial services predates any use by Counterdefendants of the marks in U.S. commerce.

55.     Because Polymath has prior trademark rights, its use of the marks POLYMATH and SECURITIES TOKEN in connection with financial services in U.S. commerce does not infringe upon any trademark rights Counterdefendants may claim to own.

56.     Accordingly, Polymath is entitled to a declaration of non-infringement with respect to its provision of financial services in U.S. commerce under the marks POLYMATH and SECURITIES TOKEN.

## COUNT III
## Fraud on the Court

57.　　Polymath incorporates by reference the allegations in Paragraphs 1-56 above as if set forth fully herein.

58.　　On information and belief, this lawsuit is part of an unconscionable scheme by Counterdefendants, facilitated through their counsel, to extract a settlement from Polymath by holding Polymath's trademark rights hostage in this Court.

59.　　On information and belief, Counterdefendants, through their counsel, have knowingly filed pleadings in this lawsuit containing wholly false allegations regarding Counterdefendants' use of the marks POLYMATH and SECURITIES TOKEN.

60.　　On information and belief, Counterdefendants, through their counsel, have knowingly filed pleadings this lawsuit containing wholly false allegations regarding Counterdefendants' ownership of federal registrations on the marks POLYMATH SECURITIES TOKEN and SECURITIES TOKEN.

61.　　On information and belief, Counterdefendants and their counsel, by filing this lawsuit, have implicated the Court in their scheme and have attempted to defile the integrity of the Court by seeking legal relief to which they know they are not entitled.

62.　　Through these egregious actions, Counterdefendants have committed fraud on the Court.

## COUNT IV
## Trademark Infringement Under 15 U.S.C. § 1125(a)

63.　　Polymath incorporates by reference the allegations in Paragraphs 1-62 above as if set forth fully herein.

64.　　Counterdefendants' use of marks confusingly similar to Polymath's marks

POLYMATH and THE SECURITIES TOKEN PLATFORM in connection with their financial services is likely to cause confusion, mistake or deception among the purchasing public as to the origin of Counterdefendants' goods and services, and is likely to deceive the public into believing that Counterdefendants' goods and services originate from, are associated with, or are sponsored or authorized by Polymath when they are not.

65.     Counterdefendants' actions demonstrate an intentional and willful intent to trade on the goodwill associated with Polymath's POLYMATH and THE SECURITIES TOKEN PLATFORM marks.

66.     By reason of the foregoing, Counterdefendants have willfully infringed the POLYMATH and THE SECURITIES TOKEN PLATFORM marks in violation of 15 U.S.C. § 1125(a).

67.     As a result of Counterdefendants' conduct, Polymath has suffered and will continue to suffer damages.

68.     Counterdefendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Polymath, for which Polymath has no adequate remedy at law.

### COUNT V
### Unfair Competition Under Texas State Common Law

69.     Polymath incorporates by reference the allegations in Paragraphs 1-68 above as if set forth fully herein.

70.     Counterdefendants' actions constitute unfair competition in violation of Texas common law.

71.     Counterdefendants knowingly and willfully engaged in the foregoing acts of unfair competition.

72.      As a result of Counterdefendants' conduct, Polymath has suffered and will continue to suffer damages.

73.      Counterdefendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Polymath, for which Polymath has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Polymath respectfully requests that this Court:

A.      Enter a judgment that Counterdefendants take nothing by way of their FAC;

B.      Dismiss all of Counterdefendants' claims with prejudice;

C.      Enter a judgment in favor of Polymath and against Counterdefendants on all of Polymath's Counterclaims;

D.      Enter a judgment declaring that Polymath is the priority user of the marks POLYMATH and THE SECURITIES TOKEN PLATFORM in connection with financial services in U.S. commerce;

E.      Enter a judgment declaring that Polymath's use of the POLYMATH and THE SECURITIES TOKEN PLATFORM marks does not violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or constitute unfair competition or trademark infringement under Texas state law;

F.      Enter a judgment that Counterdefendants have committed fraud on the Court by knowingly filing a frivolous and baseless lawsuit;

G.      Enter a judgment finding that Counterdefendants have violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

H.      Enter a judgment finding that Counterdefendants have committed unfair

competition under Texas common law;

I.     Award Polymath all damages it has sustained as a result of Counterdefendants'
fraud, infringement, and unfair competition, including but not limited to Counterdefendants'
profits along with costs and attorneys' fees, and trebling such damages pursuant to 15 U.S.C.
§ 1117(a) and other applicable provisions of law;

J.     Enter an injunction preliminarily and permanently enjoining Counterdefendants
and their directors, officers, agents, servants, employees, and all other persons in active concert
or privity or in participation with them, from:

      i.     directly or indirectly infringing or misappropriating the marks POLYMATH
           and THE SECURITIES TOKEN PLATFORM;

     ii.     continuing to advertise, promote, sell or offer to sell any goods or services that
           are likely to cause consumer confusion or misunderstanding as to the source,
           sponsorship, approval or certification of Counterdefendants' goods or services
           or as to the affiliation, connection or association with or certification by
           Polymath;

    iii.     engaging in further unfair competition with respect to Polymath; and

    iv.     assisting, inducing or aiding or abetting any other person or entity in engaging
           in any of the activities prohibited in subparagraphs i through iii above.

K.     Enter a judgment finding that this case is "exceptional" under 15 U.S.C. § 1117(a)
and, on that basis, award Polymath its attorney fees and costs;

L.     Grant Polymath such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Polymath hereby demands a trial by jury on all issues so triable.


Dated: May 15, 2018                                    Respectfully submitted,

                                                       /s/ *Hayden M. Schottlaender*
                                                       Hayden M. Schottlaender
                                                       Texas Bar No. 24098391
                                                       PERKINS COIE LLP
                                                       500 North Akard Street, Suite 3300
                                                       Dallas, Texas 75201-3347
                                                       T: (214) 965-7700
                                                       F: (214) 965-7799
                                                       HSchottlaender@perkinscoie.com

                                                       Thomas L. Holt (*PHV Pending*)
                                                       Caroline A. Teichner (*PHV Pending*)
                                                       PERKINS COIE LLP
                                                       131 South Dearborn Street, Suite 1700
                                                       Chicago, Illinois 60603-5559
                                                       T: (312) 324-8400
                                                       F: (312) 324-9400
                                                       THolt@perkinscoie.com
                                                       CTeichner@perkinscoie.com

                                                       *Attorneys for Defendant, Polymath Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record.

/s/ *Hayden M. Schottlaender*
Hayden M. Schottlaender