IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CASTRO & CO., LLC and TEXAS CRYPTOMARKS, LLC.,** | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:18-CV-678-L** |
| **POLYMATH INC.,** | § § § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the court is Defendant/Counter-Plaintiff Polymath Inc.'s ("Defendant" or "Polymath") Motion for Default Judgment (Doc. 21), filed February 19, 2019. After careful consideration of the motion, record, and applicable law, the court **dismisses with prejudice** all claims asserted by Plaintiffs/Counter-Defendants Castro & Co., LLC. ("Castro") and Texas Cryptomarks, LLC.'s ("Texas Cryptomarks") (collectively, "Plaintiffs") in their First Amended Complaint (Doc. 10) for failure to comply with a court order pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Further, the court **grants in part** and **denies in part** Defendant's Motion for Default Judgment (Doc. 21).

## I. Procedural and Factual Background

On March 21, 2018, Plaintiffs filed this action asserting claims for trademark infringement and unfair competition under the Lanham Act and state law. Plaintiffs also asserted a claim for injury to business reputation or trade name under Section 16.29 of the Texas Business and Commerce Code. Plaintiffs alleged they possess a trademark for the word marks "Securities Token" and "Polymath Securities Token" for use in connection with its products and services "currently being developed" for their online cryptocurrency exchange platform. Pls.' Original

**Memorandum Opinion and Order – Page 1**

Compl. ¶ 8. In their Original Complaint ("Complaint"), Plaintiffs alleged that Defendant is infringing on their trademarks by using similar marks on its website. *Id*. ¶ 10.

On April 11, 2018, Defendant filed a motion to dismiss (Doc. 6), arguing that Plaintiffs have no federal registrations in the asserted word marks and the Complaint failed to establish that, in the absence of federal registrations, Plaintiffs have superior common law rights in the mark. Plaintiffs subsequently amended their complaint ("Amended Complaint") (Doc. 10) and, in their response to Defendant's motion to dismiss (Doc. 11), noted that the Amended Complaint "dropped their claim for infringement of a federally registered trademark . . . and asserted new claims of federal false advertising, Texas common law unfair competition and unjust enrichment as to each unregistered mark." Pls.' Resp. ¶ 1.

On May 15, 2018, Defendant filed its Answer, Affirmative Defenses, and Counterclaims to the Amended Complaint ("Answer") (Doc. 12) and asserted several counterclaims, which include the following:

1. Declaratory judgment that Defendant has established priority rights in the mark "Polymath" and the slogan "The Securities Token Platform" in connection with financial services throughout the United States;
2. Declaratory judgment that Defendant did not infringe upon any trademark rights that Plaintiff claims to own;
3. Fraud claim based on the allegation that Plaintiffs filed a frivolous lawsuit;
4. Trademark infringement claim pursuant to 15 U.S.C. § 1125(a); and
5. Unfair competition claim under Texas law.

Def.'s Ans. ¶¶ 45-73. Plaintiffs did not answer or otherwise respond to Defendant's Answer and counterclaims contained therein and have not otherwise appeared in this action since filing the Amended Complaint. On February 7, 2019, Defendant made a request for the clerk to issue an entry of default, and the clerk entered default on the same day, which was sent to Plaintiffs' counsel of record. Docs. 19-20. On February 19, 2019, Defendant filed its Motion for Default Judgment

on its counterclaims pursuant to Federal Rule of Civil Procedure 55(b)(2), seeking statutory and additional damages and a permanent injunction.

On March 21, 2019, the counsel of record for Plaintiffs, Joshua S. Milam, filed a motion to withdraw as counsel without substitution. Doc. 23. Mr. Milam advised the court that he "ceased to be litigation counsel for Plaintiffs in or around December 2018 . . . [and] was under the impression that Plaintiffs had substituted new counsel for this matter after being relieved of his duties." Doc. 23 at 1. Mr. Milam further stated that "Plaintiffs have been advised that they should retain substitute counsel . . . [and] are advised of the current status of the case and are aware that failure to hire substitute counsel could result in a default judgment granted by the court." Doc. 23 at 1.

On March 22, 2019, the court granted Mr. Milam's motion to withdraw as counsel and directed Plaintiffs to obtain counsel by April 22, 2019. Doc. 24. In its order, the court warned Plaintiffs that their failure to comply would result in dismissal of the action for failure to comply with a court order or to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiffs received notice of this order via mail at 13155 Noel Road, Suite 900, Dallas, Texas 75240, but did not comply with the court's order. On August 9, 2019, the court entered another order directing Plaintiffs to obtain counsel and instructing them that the court would dismiss their claims pursuant to Rule 41(b) if Plaintiffs failed to comply by August 23, 2019. The court further instructed Plaintiffs that it would enter a default judgment against them if they did not obtain counsel by the August 23rd deadline. Once again, Plaintiffs have not complied with the court's order.

Rule 41(b) of the Federal Rules of Civil Procedure allows a court to dismiss an action *sua sponte* for a party's failure to prosecute or comply with a court order. *Larson v. Scott*, 157 F.3d 1030, 1031 (5th Cir. 1998) (citation omitted); *Long v. Simmons*, 77 F.3d 878, 879 (5th Cir. 1996) (footnote and citation omitted). "This authority flows from the court's inherent power to control

its docket and prevent undue delays in the disposition of pending cases." *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)). The court's decision to dismiss an action, however, is materially affected by whether the dismissal is to be with or without prejudice. "A dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumaciousness and the record reflects that the district court employed lesser sanctions before dismissing the action." *Long v. Simmons*, 77 F.3d at 880 (footnote and citation omitted). "Assessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket." *Boudwin*, 756 F.2d at 401 (quoting *Rogers v. Kroger*, 669 F.2d 317, 321-22 (5th Cir. 1982)).

The court does not know the basis for Plaintiffs' failure to comply with the court's order to obtain counsel by August 23, 2019. Nevertheless, the court views Plaintiffs' disregard for the court's orders as contumacious conduct. The court employed lesser sanctions to provide Plaintiffs at least two opportunities to comply with its orders before it dismisses their claims, but Plaintiffs failed to comply. Moreover, Plaintiffs' former counsel informed them that failure to obtain substitute counsel could result in a default judgment against them. Despite these repeated warnings, Plaintiffs never obtained counsel to represent them. Accordingly, the court **dismisses with prejudice** the claims asserted by Plaintiffs in the Amended Complaint (Doc. 10), which is an appropriate sanction for their failure to comply with the court's March 22, 2019 and August 23, 2019 orders. The court now turns to Defendant's Motion for Default Judgment on its counterclaims.

## II. Motion for Default Judgment

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court has entered a default against Plaintiffs, and Defendant now requests the court to enter a final default judgment against them as to its counterclaims.

To date, Plaintiffs have not responded to or otherwise defended against Polymath's counterclaims in this lawsuit. By failing to answer or otherwise respond to Polymath's counterclaims, Plaintiffs have admitted the well-pleaded allegations of the counterclaims asserted in Polymath's Answer and are precluded from contesting the established facts on appeal. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Stated differently, a "[counter-defendant] is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, a counter-defendant may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id.* Additionally, a party "is not entitled to a default judgment as a matter of right, even whe[n] the [opposing party] is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). A district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). In determining whether entry of a default judgment is warranted in a particular matter, the court may consider: "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable

neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Id*.

Based on the allegations presented by Polymath in its Answer (Doc. 12) and Motion for Default Judgment (Doc. 21), the court **grants** Polymath's Motion for Default Judgment (Doc. 21) as it relates to its request for declaratory judgment establishing (1) Polymath has priority rights to the marks at issue, and (2) it is not liable for trademark infringement or unfair competition under the Lanham Act or Texas law. The court, however, **denies** Polymath's Motion for Default Judgment (Doc. 21) as it relates to its counterclaims for fraud on the court, trademark infringement under the Lanham Act, and unfair competition under Texas law.

### A. Polymath's Counterclaims for Declaratory Judgments for Priority User of Marks and No Liability for Infringement or Unfair Competition

Polymath asserts trademark rights in the word marks "Polymath" and "The Securities Token Platform" in connection with its financial services business and requests that the court enter a declaratory judgment that it is the priority user of the marks "Polymath" and "The Securities Token Platform." Polymath further requests that the court enter a declaratory judgment that it did not commit trademark infringement under the Lanham Act or unfair competition under Texas law.

In its Answer, Polymath asserts that, since at least as early as September 2017, it has "continuously used in U.S. commerce the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM in connection with the provision of its various financial services, including on its website[.]" Def.'s Ans. ¶ 46. Polymath further contends that, "[s]ince at least as early as September 2017, [it] has extensively advertised its financial services in U.S. commerce under the mark POLYMATH and the slogan THE SECURITIES TOKEN PLATFORM, including on its websites and in its whitepaper [sic]." Def.'s Ans. ¶ 47. According to Polymath, "[b]y virtue of these activities, [it] has established priority rights in the mark POLYMATH and the slogan THE

SECURITIES TOKEN PLATFORM in connection with financial services throughout the United States." Def.'s Ans. ¶ 48. Polymath also asserts that, "[o]n information and belief, [Plaintiffs] have never used the marks POLYMATH and SECURITIES TOKEN in U.S. commerce." Def.'s Ans. ¶ 48. Considering these allegations, Polymath requests that the court "enter a judgment declaring that Polymath is the priority user of the marks POLYMATH and THE SECURITIES TOKEN PLATFORM in connection with financial services in U.S. commerce." Def.'s Mot. for Default J. 4.

Polymath does not assert that it has a federally-registered trademark in these marks[1] but asserts common-law trademark protection. "The Lanham Act provides that a trademark may be 'any word, name, symbol, or device, or any combination thereof' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Board of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (quoting 15 U.S.C. § 1127). "A mark need not be registered in order to obtain protection because '[o]wnership of trademarks is established by use, not by registration.'" *Id*. (quoting *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990)). "The protectability of unregistered marks is governed generally by the same principles that qualify a mark for registration under the Lanham Act." *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "The key is whether the mark is 'capable of distinguishing the applicant's goods from those of others.'" *Id*. (quoting *Two Pesos, Inc.*, 505 U.S. at 768).

---

[1] In its Answer, Polymath states that it filed a Section 1(a) use-based application at the United States Patent and Trademark Office ("USPTO") to register the mark "Polymath," claiming an actual first-use date of September 8, 2017, and it attaches a copy of the application to its motion. Def.'s Ans. ¶ 37 (citing Ex. D). Defendant has not subsequently advised the court whether the application was accepted by the USPTO. Accordingly, the court makes no determination as to whether Polymath has a registered trademark for the mark "Polymath."

The court determines that Polymath has sufficiently set forth well-pleaded allegations to establish that it is the priority user of the marks "Polymath" and "The Securities Token Platform" in connection with financial services in U.S. commerce. Polymath has used the distinguishing marks on its website as early as September 2017, and the marks have been published as advertisements in "numerous blockchain-interested websites." Def.'s Ans. ¶¶ 20-21. It also has "expended significant resources in promoting its services under the POLYMATH mark and slogan." *Id.* ¶ 22. On January 16, 2018, Castro filed a Section 1(b) intent-to-use basis application with the USPTO to register the mark "Polymath Securities Token," which means that, at the time the application was filed, it was not using the mark in commerce. Moreover, Polymath asserts that it has found no evidence that Castro has ever used the mark "Polymath Securities Token" in commerce. *Id.* ¶ 31. Taken as true, these allegations show that Polymath is the priority user of the marks "Polymath" and "The Securities Token Platform" because it used them in commerce as early as September 2017, whereas Castro had not used the similar mark, "Polymath Securities Token," at any time prior to Polymath's use. Accordingly, the court determines that Polymath is entitled to default judgment as to its counterclaim for a declaratory judgment of priority and non-infringement.

As the court will dismiss Plaintiffs' claims for trademark infringement, Polymath is entitled to a declaratory judgment that: (1) it is the priority user of the marks "Polymath" and "The Securities Token Platform" in connection with financial services in U.S. commerce, and (2) its use of these marks did not constitute trademark infringement under the Lanham Act or Texas trademark law with respect to any marks asserted by Plaintiffs in the Amended Complaint. Similarly, the court has dismissed Plaintiffs' claims against Polymath for unfair competition. Therefore, the court further determines that Polymath is entitled to a declaratory judgment that it did not commit unfair competition under Texas law, as the same evidence that supports an action

for trademark infringement generally supports an action for unfair competition. *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 678 (W.D. Tex. 2008).

For the foregoing reasons, the court will **grant** Polymath's Motion for Default Judgment with respect to its request that the court enter declaratory judgment that it is the priority user of the marks "Polymath" and "The Securities Token Platform" and that it did not commit trademark infringement or unfair competition under the Lanham Act or Texas law.

B.     **Counterclaim for Fraud on the Court**

Polymath asserts that Plaintiffs' lawsuit "is part of an unconscionable scheme . . . facilitated through their counsel, to extract a settlement from Polymath by holding Polymath's trademark rights hostage in this Court." Def.'s Ans. ¶ 58. Polymath contends that Plaintiffs, "through their counsel, have knowingly filed pleadings in this lawsuit containing wholly false allegations regarding [Plaintiffs'] use of the marks POLYMATH and SECURITIES TOKEN" and "false allegations regarding [their] ownership of federal registrations." *Id*. ¶¶ 59-60.

According to the Fifth Circuit,

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

*Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999) (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)). The allegations set forth in Polymath's Answer do not rise to the level of egregious misconduct contemplated by the Fifth Circuit in its standard for establishing fraud on the court. Moreover, Plaintiffs filed the Amended Complaint, conceding that it did not obtain federal registrations in the marks at issue. Regardless of Plaintiffs' motivation in

filing this lawsuit, and notwithstanding the possibility that they knowingly filed frivolous claims, there are no allegations in the record that Plaintiffs committed fraud on the court as defined by applicable Fifth Circuit authority. Accordingly, the court will **deny** Polymath's Motion for Default Judgment (Doc. 21) with respect to its request that the court enter a judgment that Plaintiffs have committed fraud on the court by filing this action and **dismisses with prejudice** Polymath's counterclaim for fraud on the court.

C. **Counterclaims for Infringement and Unfair Competition**

Polymath asserts counterclaims against Plaintiffs for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Texas common law. With respect to its infringement claim, Polymath asserts that Plaintiffs' "use of marks confusingly similar to Polymath's marks POLYMATH and THE SECURITIES TOKEN PLATFORM in connection with their financial services is likely to cause confusion, mistake or deception among the purchasing public[.]" Def.'s Ans. ¶ 64. With respect to its unfair competition claim, Polymath asserts that Plaintiffs' "actions constitute unfair competition in violation of Texas common law." *Id.* ¶ 70. Both counterclaims, as asserted in Polymath's Answer, are alleged in a conclusory fashion and not supported by sufficient factual allegations.

Polymath has failed to establish the elements of trademark infringement, which includes a showing that "the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Board of Supervisors for Louisiana State Univ. Agric. & Mech. Coll.*, 550 F.3d at 478 (citation and quotation marks omitted). Polymath also fails to allege that Castro has ever used the mark so as to cause a likelihood of confusion. To the contrary, Polymath admits that it "has found no evidence that Castro is using—or has ever used—the applied-for POLYMATH SECURITIES TOKEN mark in U.S. commerce" nor does Castro "have a bona fide intent to use the mark in U.S. commerce to this

day." Def.'s Ans. ¶ 31. In the absence of any allegations of such use, Polymath failed to support its assertion that Plaintiffs are engaging in infringement of its marks or unfair competition. *See S & H Industries, Inc. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A[n] . . . unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.").

As Polymath has failed to set forth sufficient allegations to establish its counterclaims against Plaintiffs for trademark infringement under the Lanham Act or unfair competition under Texas law, the court will **deny** its motion for default judgment as to these counterclaims. Further, based on Polymath's own admission that Plaintiffs likely are not using the marks at issue, the court finds that amending Polymath's Answer and the counterclaims therein would be futile and unnecessarily delay the resolution of this action. The court, therefore, **dismisses with prejudice** Polymath's counterclaims for trademark infringement and unfair competition.

### III. Polymath's Request for Damages and Injunctive Relief

As the court has dismissed Polymath's counterclaims for fraud on the court, trademark infringement, and unfair competition, it finds that Polymath has not suffered any damages and, therefore, is not entitled to monetary damages. Accordingly, Polymath's request for an evidentiary hearing regarding damages is **denied**. Further, the court declines to declare this case "exceptional" and will **deny** Polymath's request for attorney's fees pursuant to 15 U.S.C. § 1117(a). "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Supreme Court has held that an exceptional case is one that:

> stands out from others with [1] respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Despite Polymath's assertions, it is not entitled to attorney's fees under 15 U.S.C. § 1117(a), as it failed to sufficiently plead its counterclaim for trademark infringement and, thus, did not prevail on its counterclaim. Even if Polymath prevailed on its trademark infringement counterclaim, the court does not consider this case exceptional as defined by the Supreme Court. In its Answer, Polymath asserts that the suit was frivolous and in bad faith, and thus, an exceptional case, because Plaintiffs (1) did not have a registered trademark in the mark SECURITIES TOKEN; (2) failed to allege they were the senior users of the asserted marks; and (3) filed the Amended Complaint to "overcome the deficiencies identified by Polymath in its Motion to Dismiss." Def.'s Ans. ¶¶ 41-42, 44. The court does not find these conclusory allegations persuasive.

That Plaintiffs' arguments may be losing arguments does not warrant a finding of exceptionality, and without sufficient facts to demonstrate that the allegations Plaintiffs assert in the Amended Complaint were in fact frivolous or in bad faith, the court disagrees with Polymath's request to deem this case exceptional. *See De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, No. 3:12-cv-01462, 2015 WL 5033893, at *9 (N.D. Tex. Aug. 25, 2015) (citing *Stragent, LLC v. Intel Corp.*, No. 11-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) ("[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on the arguments that were frivolous or made in bad faith.")). Further, this case is being resolved early in litigation, so the court does not find anything unreasonable about the manner in which the parties litigated this action. Therefore, the court will **deny** Polymath's additional request for attorney's fees pursuant to 15 U.S.C. § 1117(a).

The court also finds that Polymath is not entitled to injunctive relief. A permanent injunction is a remedy generally contemplated at the remedy phase of a legal proceeding. The

elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Polymath failed to adequately plead its underlying counterclaims for unfair competition and trademark infringement and, therefore, will not prevail as to these counterclaims. As a result, Polymath has failed to meet its evidentiary burden for injunctive relief. Moreover, Polymath admits that it has no evidence that Plaintiffs are using the marks at issue and, to the extent they are, acknowledges any use would be de minimis.[2] Although the court will grant declaratory judgment in favor of Polymath, the declaratory judgment is unrelated to any conduct by Plaintiffs that would justify injunctive relief. Therefore, Polymath's request for injunctive relief is also **denied.**

## IV. Conclusion

For the reasons set forth herein, the court **dismisses with prejudice** Plaintiffs' claims as set forth in the Amended Complaint (Doc. 10) pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order; **grants** Defendant Polymath Inc.'s Motion for Default Judgment (Doc. 21) with respect to its counterclaims for a declaratory judgment that it is a priority user of the marks at issue and did not commit trademark infringement or engage in unfair competition; and **denies** Polymath's Motion for Default Judgment (Doc. 21) with respect to its counterclaims for fraud on the court, trademark infringement, and unfair competition. Further, the court **dismisses with prejudice** Polymath's counterclaims for fraud on the court, trademark

---

[2] Polymath also asserts that any potential use would be in bad faith. Def. Ans. ¶ 50. Based on its Answer, Polymath fails to allege facts demonstrating any potential use of the marks by Plaintiffs, to which Polymath asserts there is none, would be in bad faith. Therefore, the court declines to address this issue. Further, even if Polymath sufficiently pleaded facts to support its counterclaims for trademark infringement and unfair competition, it fails to demonstrate that "there is a substantial threat that [it will suffer] irreparable harm" without an injunction. *Clark*, 812 F.2d at 993 (citation omitted).

infringement, and unfair competition. Accordingly, the court finds Polymath is not entitled to recover damages for any of its counterclaims. Additionally, the court **denies** Polymath's request for attorney's fees, including fees requested pursuant to 15 U.S.C. § 1117(a), and **denies** Polymath's request for injunctive relief. The court will enter default judgment in accordance with its decision set forth in this opinion by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 6th day of September, 2019.

Sam A. Lindsay
United States District Judge